# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

TALMADGE PINKSTON,

                    Plaintiff,

         v.                                    **Case No. 18-CV-1708**

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

                    Defendant.

## DECISION AND ORDER AFFIRMING
## THE DECISION OF THE COMMISSIONER

Talmadge Pinkston is a former Marine who alleges he is unable to work primarily because of post-traumatic stress disorder (PTSD). (Tr. 293.) Although the VA found him to be fifty percent disabled (Tr. 38) (later increased to seventy percent and, as of August 1, 2018, one-hundred percent (Tr. 7; *see also* ECF No. 13-1 at 1-5)), the Commissioner denied Pinktson's applications for social security disability insurance and supplemental security income benefits. Pinkston asks this court to review that decision. The final decision of the Commissioner is set forth in the July 2, 2018 decision of an administrative law judge (ALJ). (Tr. 13-27.)

The ALJ found that Pinkston suffered from the following severe impairments: "depressive disorder, history of alcohol addiction in sustained remission, and anxiety disorders (including post-traumatic stress disorder)." (Tr. 19.) These impairments did not meet or medically equal a Listing. (Tr. 19-21.) Pinkston retained "the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to simple, routine and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and occasional interaction with the public, coworkers and supervisors." (Tr. 21.) According to a vocational expert (*see* Tr. 52-55), a person with this residual functional capacity could perform jobs that existed in substantial numbers in the national economy. Therefore, Pinkston was not disabled.

Pinkston was represented by an attorney at the hearing before the ALJ but is now representing himself. In support of his claim, Pinkston submitted a letter in which he explains the nature of his impairments and how they affect his life. (ECF No. 13.) It does not point to any specific error of the ALJ other than to argue generally that he erred in finding Pinkston was not disabled.

The court's role in reviewing the ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). If the ALJ committed a material error of law, however, the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

Although the court reviews the pleadings of pro se plaintiffs more liberally than those drafted by lawyers, it is not the court's role to search out or make arguments for an unrepresented party. *Woods v. Colvin*, No. 3:14-CV-02020-CAN, 2015 U.S. Dist. LEXIS 167859, at *6 (N.D. Ind. Dec. 16, 2015) (citing *Small v. Endicott*, 998 F.2d 411, 417 (7th Cir. 1993)); *see also Herman v. Berryhill*, No. 16 CV 50298, 2018 U.S. Dist. LEXIS 69634, at *22 (N.D. Ill. Feb. 23, 2018) ("In her briefs, plaintiff has asked this Court to review the record and find that she is disabled, but it is not this Court's job to construct a party's argument for her, and this holds true even when that party is proceeding *pro se*." (quotation marks and brackets omitted)).

The Commissioner in his response noted that Pinkston failed to point to any specific error in the ALJ's decision. Pinkston did not reply.

Because Pinkston has not alleged any specific error in the ALJ's decision, it would be appropriate to simply deny his challenge as unsupported. Nonetheless, liberally

construing Pinkston's letter as arguing that the ALJ's decision was not supported by substantial evidence, the court will review the ALJ's decision for any apparent error.

The ALJ appropriately considered whether Pinkston's impairments met a Listing, most relevantly Listing 12.15, which deals with "trauma- and stressor-related disorders." There was substantial evidence that Pinkston's PTSD did not satisfy the "paragraph B" criteria:

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

There is no indication that any medical professional ever concluded that Pinkston suffered at least one "extreme" limitation or two "marked" limitations in the denominated domains. Nor was there evidence that Pinkston satisfied the "paragraph C" criteria:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); <u>and</u>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Consequently, there was substantial evidence to support the ALJ's conclusion that Pinkston did not meet or medically equal a Listing.

Turning to the question of whether the ALJ's finding of Pinkston's residual functional capacity was supported by substantial evidence, the court begins with the ALJ's assessment of the medical opinions.

The ALJ adequately explained that he discounted the opinion of a consultative examiner, Dr. Ertl, insofar as he believed Pinkston would need instructions repeated. The ALJ noted that Dr. Ertl concluded that Pinkston appeared to be feigning difficultly in the memory assessment, and other medical evidence demonstrated normal concentration. (Tr. 24.)

The ALJ accepted the opinions of three medical sources who said that Pinkston "had some moderate limitations in understanding and memory, sustained concentration and persistence, social interaction and adaptation, but retained the capacity to understand, remember, carry out and sustain performance of one to three step tasks." (Tr. 24-25.) The ALJ incorporated these limitations in the hypothetical he presented to the vocational expert:

> Now, let's assume a person of the claimant's age, education, and work experience who is able to perform work with no exertional limitations, but the person is limited to only simple routine and repetitive tasks with no fast-paced requirements, only simple work-related decisions, occasional workplace changes, and no more than occasional interaction with the public, coworkers, and supervisors.

(Tr. 52.)

The hypothetical that an ALJ presents to a vocational expert should include all of the claimant's limitations that are supported by the record. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The ALJ's hypothetical appropriately tracked the limitations found by the medical experts, to whose opinions the ALJ assigned great weight.

The court notes the possibility of error in that this hypothetical omits any limitation on exposure to loud noises. The ALJ noted that Pinkston reported feeling nervous if exposed to loud noises (Tr. 20, 25), and a limitation in this domain is supported by the medical record (*see*, e.g., Tr. 822, 843, 1584). However, it is unclear how Pinkston is affected by exposure to loud noises, *e.g.*, whether it triggers limitations already accounted for in the hypothetical or whether it triggers additional symptoms. Because Pinkston has not demonstrated that loud noises result in further limitations beyond those accounted for in his residual functional capacity, it was not error for the ALJ to omit it in the hypothetical he presented to the vocational expert. *See Underwood v. Astrue*, No. 2:11-CV-354-JD-PRC, 2013 U.S. Dist. LEXIS 85071, at *42 (N.D. Ind. Feb. 26, 2013).

The ALJ then reasonably relied on the vocational expert's testimony to conclude that jobs exist in the national economy that Pinkston could do with his impairments. This conclusion was also supported by substantial evidence.

Because the ALJ's decision was supported by substantial evidence and the court has not identified any error of law, **IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. Pinkston's complaint and this action are **dismissed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of October, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment (60 days if one of the parties is, for example, the United States, a United States agency, or a United States officer or employee sued in an official capacity. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.